IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-CV-357-FL

| | | |
|---|---|---|
| KAREN MOUZON on behalf of K.W. a minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | ORDER |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings. (DE 16, 20). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert T. Numbers, II, entered memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's decision. Plaintiff timely filed objections to the M&R, and the issues raised are ripe for ruling. For the reasons that follow, the court adopts the M&R as its own, grants defendant's motion, denies plaintiff's motion, and affirms defendant's final decision.

**BACKGROUND**

On August 15, 2012, defendant determined that claimant, K.W., a minor, ("K.W." or "claimant"), who is appearing in the instant case pro se through his grandmother and legal guardian, Karen Mouzon, ("Mouzon" or "plaintiff"), was disabled as of April 17, 2012. On June 8, 2015, defendant determined that claimant, who was then three years old, was no longer disabled as of June 1, 2015. The determination was upheld on reconsideration. Plaintiff requested hearing before an administrative law judge ("ALJ"), who, after a September 20, 2017, hearing, denied plaintiff's

request for relief from the cessation determination. Plaintiff requested review, and the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as defendant's final decision. Plaintiff then filed pro se a complaint in this court on July 19, 2018, seeking review of defendant's decision.

**COURT'S DISCUSSION**

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence [is] . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion," Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and an ALJ "must build

2

an accurate and logical bridge from the evidence to his conclusion." Id. (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

To assist it in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for disability benefits for a child turns on whether the child has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

In order to determine whether claimant continued to be disabled, following claimant's favorable disability determination in 2012, the ALJ was required to follow a three-step medical improvement evaluation process. See 20 C.F.R. § 416.994a(b). First, the ALJ must determine whether medical improvement occurred in the impairment that the claimant had at the time of his 2012 disability determination (referenced as the "comparison point decision" or "CPD"). 20 C.F.R. § 416.994a(b)(1). Second, if there has been a medical improvement and if the CPD was based on functional equivalence to the listings, the ALJ must consider whether the CPD impairment currently functionally equals the listings. 20 C.F.R. § 416.994a(b)(2). If not, at step three, the ALJ must determine if the claimant is currently disabled under the rules, including whether claimant has severe impairment(s) that functionally equal(s) the listings. 20 C.F.R. § 416.994a(b)(3).

In determining whether an impairment or combination of impairments functionally equals the listings, the ALJ must assess the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and maniputlating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To functionally equal the listings, the claimant's impairment or impairments must result in at least "marked" limitations[1] in two domains of functioning. 20 C.F.R. § 416.926a(d). In sum, the claimant will not longer be considered disabled if the ALJ finds that claimant's impairments have medically improved and no longer result in marked or more severe functional limitations. The claimant has the burden of demonstrating that his impairments meet or equal a listed impairment. See Kellough v. Heckler, 785 F.2d 1147, 1152 (4th Cir. 1986).

---

[1] A "marked" limitation is one that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2).

4

In this case, the ALJ performed the three-step medical improvement evaluation process. At step one, the ALJ determined that at the time of the 2012 CPD, claimant had the following medically determinable impairments: autism spectrum disorder ("ASD"); chromosome 8 duplication; and developmental delay. (Tr. 14). At the time of the 2012 CPD, claimant's impairments resulted in marked limitations in two domains: acquiring and using information; and interacting and relating with others. (Tr. 15). At step two, the ALJ determined that medical improvement occurred as of June 1, 2015, and that since that time the impairments that the claimant had at the time of the 2012 CPD have not functionally equaled the listings. (Id.). At step three, the ALJ determined that claimant has not had impairments that meet or functionally qual the listings. (Tr. 31). Therefore, the ALJ found that claimant's disability ended as of June 1, 2015, and claimant has not become disabled again since that date. (Tr. 32).

B.     Analysis

Plaintiff argues that medical and educational evidence shows that K.W.'s conditions have worsened since the 2012 CPD. The magistrate judge cogently addressed plaintiff's argument based upon an asserted worsening of conditions since the 2012 CPD. (See M&R (DE 23) at 10-13). Upon de novo review of plaintiff's argument, the court adopts the M&R as its own. The court writes separately to augment the analysis in the M&R.

Plaintiff suggests in her objections that the ALJ failed to consider properly the medical assessment performed by Dr. Patrice Minter, on August 5, 2014, as evidence that plaintiff could not dress himself without supervision, could not pedal a tricycle, had "noted behavioral issues," and had an affirmed diagnosis of ASD and developmental delays. (Obj. (DE 26) at 2). The ALJ, however, specifically discussed the assessment of Minter, noting findings that plaintiff did not dress with

5

supervision, did not pedal a tricycle, "did not listen and was disobedient," and was "diagnosed with autism and developmental delay." (Tr. 19). The ALJ also noted that Dr. Minter found that plaintiff was "talking a lot more." (Id.). The ALJ considered Dr. Minter's assessment under the domain of "health and physical well-being," noting that claimant had a healthy well-child check in August 2014, as a basis for finding no limitation in this domain. (Tr. 30-31).

Further discussion of Dr. Minter's assessment was not warranted, particularly in the key domains of acquiring and using information and interacting and relating to others, for several reasons. First, Dr. Minter's assessment came ten months prior to the cessation date, at a time when defendant does not dispute claimant was disabled. (Tr. 456). Second, Dr. Minter does not make any findings tending to show a marked limitation in the functional areas of these domains. (Id.). Third, and most critically, the ALJ discussed in great detail and found more directly probative multiple additional assessments by speech pathologists, teachers, doctors, and other evaluators close to the date of cessation. (Tr. 19-28).

As an example among many, the ALJ noted immediately after discussing Dr. Minter's assessment, that Kelly Galloway, speech pathologist, evaluated claimant on April 29, 2015, and determined that claimant's "receptive and expressive language skills were within normal limits at [that] time for [his] age," "he is able to participate in simple conversations with adults and peers," and "he had made significant progress." (Tr. 19; see Tr. 220). The ALJ properly gave significant weight to the opinion of Ms. Galloway "as she had been providing speech therapy to the claimant over a period of time," and it was consistent with other evaluations in the record. (Tr. 20).

Claimant's teacher, Maggie Smith, noted "obvious" problems, but not "serious" or "very serious" problems, in an April 29, 2015, assessment, in the areas of "Interpreting meaning of facial

6

expression, body language, hints, sarcasm," "Using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation," and "Organizing own things or school materials," but slight or no problems in 51 other functional areas. (Tr. 229). As noted previously, a "marked" functional limitation is one that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2) (emphasis added). Thus, the speech pathologist and teacher assessments do not provide support for a finding of marked functional limitations for claimant.

Plaintiff also suggests that the ALJ erred in relying upon opinions of state agency reviewers who assessed claimant's limitations in June 2015. But, the ALJ gave only "limited weight" to these opinions, although he agreed with the majority of their assessments. (Tr. 25). The state agency reviewer opinions were consistent in material part with all the other assessments around the time of the cessation date, upon which the ALJ placed significant weight, in finding no marked limitations in any functional areas. (See Tr. 18-23; see, e.g., Rebecca Mussman (Tr. 409-415), Sara Cathey (Tr. 417), Kelly Galloway (Tr. 220), Maggie Smith (Tr. 227-233), Julie Lowry (Tr. 501-507)).

Plaintiff argues that the ALJ did not take into account all of the impairments that accompany a child with ASD, and instead addressed only certain aspects as reflected in the opinions of state agency reviewers. However, considered individually and in combination, the opinions of the five professionals cited above provide a wide and comprehensive view of all of claimant's impairments. (See id.). Plaintiff also suggests that claimant's qualification for an individualized education program (IEP) along with a modified school curriculum and smaller class size demonstrate claimant's marked limitations. But, the ALJ accurately and cogently addressed the significance of plaintiff's IEP and classroom accommodations in his opinion, noting no evidence of marked deficits from these modifications:

> [Claimant's IEP] start date was August 17, 2015. His behavior did not impede his learning or the learning of others. His behavior did not require a Functional Behavior Assessment or a Behavior Intervention Plan. He demonstrated speech and language skills ranging from borderline to within the average range. The delivery model for speech language services would change from direct pull-out therapy to indirect consultation with the classroom teacher for the 2015-2016 school year. He needed instruction in pre-academic and readiness skills, such as naming numbers 1 through 10. He demonstrated inconsistent responses for naming and pointing to colors and shapes. He also demonstrated weakness for rote counting and reading numbers.

(Tr. 20-21; see Tr. 234-236). In this manner, the IEP is consistent with the evaluations of claimant's teachers which identified obvious problem areas, but none considered to be serious or very serious. (Maggie Smith (Tr. 227-233), Julie Lowry (Tr. 501-507)). Moreover, school records in September 2017 document continued improvement in grade level functioning with continued assistance of an IEP. (Tr. 294-297).

Finally, plaintiff argues that the ALJ erred "by not recommending an evaluation be performed in order to establish new medical information to support [the ALJ's] allegation that K.W. no longer has marked limitations which qualify him for disability benefits." (Pl's Obj. (DE 29) at 1). This argument is unavailing for two main reasons. First, upon assessment of continuation of disability benefits for a child, the burden rests upon plaintiff to demonstrate functional limitations meeting or equivalent to a listing at all steps in the evaluation. See Kellough, 785 F.2d at 1152 ("To be disabled under the Listings . . . the claimant must present evidence that the impairment meets or is medically equivalent to an impairment listed."); see also Gray ex rel. Whymss v. Comm'r of Soc. Sec., 454 F. App'x 748, 750 (11th Cir. 2011) (same, in context of child disability evaluation).

Second, there was no need for the ALJ to order any further evaluation of claimant where there were multiple comprehensive assessments in the record that gave the ALJ a full and accurate picture of plaintiff's functional limitations. (See Tr. 18-23; see, e.g., Rebecca Mussman (Tr. 409-

415), Sara Cathey (Tr. 417), Kelly Galloway (Tr. 220), Maggie Smith (Tr. 227-233), Julie Lowry (Tr. 501-507)).

In sum, substantial evidence supports ALJ's determination of non-disability, and the ALJ sufficiently discussed conflicting evidence in the record for the court to discern an "accurate and logical bridge from the evidence to [the ALJ's] conclusion." Monroe, 826 F.3d at 189. Therefore, plaintiff's objections must be overruled.

## CONCLUSION

Based on the foregoing, upon careful review of the M&R and the record, the court ADOPTS the M&R as its own. Plaintiff's motion for judgment on the pleadings (DE 16) is DENIED, and defendant's motion for judgment on the pleadings (DE 20) is GRANTED. The clerk of court is DIRECTED to close this case.

SO ORDERED this the 27th day of September, 2019.

LOUISE W. FLANAGAN
United States District Judge